Southern Massachusetts Oil Corporation v. Commissioner.
Southern Massachusetts Oil Corp. v. Commissioner
Docket No. 3958-64.
United States Tax Court
T.C. Memo 1966-115; 1966 Tax Ct. Memo LEXIS 170; 25 T.C.M. (CCH) 614; T.C.M. (RIA) 66115; May 27, 1966
*170 Jerry M. Brown, for the petitioner. James E. Markham, Jr., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for fiscal years ended September 30 as follows: Year
Deficiency
1958
$7,748.93
1959
9,309.24
1960
8,319.16
1961
8,692.06 The only issue for decision is whether the Commissioner erred in determining that the amounts paid during the tax year and deducted as commission expense were in fact paid for the acquisition of a capital asset and "hence" are not deductible from income as ordinary and necessary business expenses. Findings of Fact The petitioner is a Massachusetts corporation organized in 1929. It filed consolidated returns for the tax years with the director of internal revenue at Boston. It has been engaged at all times material hereto in the sale of fuel oil at retail. John James, Hugh Daniel and Ambrose McGillis, brothers, were engaged as partners in the business of selling, installing and servicing oil burning heating equipment in the area in and around Brockton. They later incorporated that business under the name of McGillis Service Engineering, *171 Inc. Neither the partnership nor the corporation was ever engaged in or authorized to engage in the business of a dealer in or seller of fuel oil. However, the McGillises recommended a retail seller of fuel oil to their customers from whom to buy fuel oil, and many of their customers followed those recommendations, even changing from one retailer to another at the suggestion of the McGillises. The petitioner and the McGillis partnership entered into an agreement dated June 1, 1939 under which the partnership granted to the petitioner "the exclusive privilege of supplying fuel oils to all customers and users" of the partnership and the petitioner agreed to pay the partnership a commission of one-half cent per gallon on all sales in the Brockton area. That arrangement continued but at some time in 1954 the petitioner and McGillis Service Engineering, Inc. entered into a new oral agreement under which the payment of the commissions was to continue and a subsidiary of the petitioner was to take over the business of selling, installing and servicing oil heating equipment formerly conducted by Service Engineering. The latter had been using solely the Hayward oil burner and parts, owned *172 and supplied by a subsidiary of the petitioner. The petitioner, Southern Massachusetts Oil Corporation, paid the following amounts as commissions to McGillis Service Engineering, Inc. and claimed them as deductions on its returns for its fiscal years ended September 30: 1958 - $15,922.37; 1959 - $17,239.33; 1960 - $15,405.85; and 1961 - $16,096.41. The Commissioner, in determining the deficiencies, disallowed those deductions and explained that they were "paid for the acquisition of a capital asset" and "hence are not deductible." All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The McGillis' brothers as partners and later as owners of Service Engineering, had been engaged for many years in the business of selling, installing and servicing oil burning heaters in the Brockton area. They had advised their customers to buy their fuel oil from the petitioner and the petitioner had agreed to pay and had regularly paid commissions to the partnership and later to the corporation on the sales which it thus was able to make. The amount of the commissions depended upon the number of gallons sold by the petitioner to its customers in the Brockton *173 area in each year. The oil burner and parts which Service Engineering had been installing for a number of years up to 1954 were obtained from a subsidiary of the petitioner. Hugh McGillis came to Raymond E. Skladzien, president of the petitioner, in 1954 and suggested that the petitioner take over the oil heater business of Service Engineering but continue to pay it the commissions on the petitioner's Brockton area fuel oil sales. The business of Service Engineering had been declining but Skladzien thought it might be improved. McGillis wanted to be relieved of the business of selling, installing and servicing oil heaters. McGillis and Skladzien agreed that Service Engineering would continue to receive the commissions on the petitioner's sales of fuel oil in the Brockton area and the business of the sale, installation and servicing of oil burners would be purchased by the petitioner and conducted by a subsidiary. The petitioner formed a wholly-owned subsidiary named McGillis Heating Service, Inc. which took over the business of selling, installing and servicing oil heaters. The petitioner paid Service Engineering in full for that business as Heating Service had no funds for that *174 purpose. The petitioner also loaned Service Engineering $35,000 which was to be repaid, without interest, and was repaid within two years, from the commissions on heating oil sales due the borrower from the lender. McGillis and the petitioner each had an attorney who, together, were to take care of the legal aspects of the oral agreement. They delayed, for unexplained reasons, until December 29, 1955, when a written agreement was presented for execution by McGillis and Skladzien. It named Service Engineering as seller and Heating Service as buyer. The petitioner was not named as a party to it. McGillis signed it on behalf of the seller and Skladzien signed it as president of the buyer, Heating Service. It correctly stated that Heating Service was buying the seller's good will and trade name of its business of selling, installing and servicing oil burners and heating equipment in the territory described therein. However, it incorrectly stated that Heating Service was also buying the good will and trade name of the seller's "business of selling fuel oil." The seller was not authorized to engage in business as a dealer in or seller of fuel oil and it had no such business to sell. Heating *175 Service was not authorized to engage in any such business and did not purchase or pay for any such business. The agreement also stated erroneously that Heating Service was to pay to the seller, "as consideration for the foregoing," commissions quarterly for a period of ten years "on deliveries by the Buyer and/or Southern Massachusetts Oil Corporation or their successors and assigns, of #2 fuel oil within the territory, as follows:" and there followed details regarding the rates per gallon to be paid. The Commissioner, relying upon the erroneous statements in the agreement of December 29, 1955, argues that the petitioner by payment of the commissions to Service Engineering was buying a capital asset. He does not always identify the capital asset but apparently he means the good will and trade name of Service Engineering's "business of selling fuel oil," as mentioned in the December 29, 1955, agreement between Service Engineering and Heating Service. Not only was the petitioner not a party to the agreement but in fact Service Engineering never had any such business and could not and did not transfer any fuel oil selling business to the petitioner in December 1955 or by that agreement. *176 Other documents in evidence prepared at the same time as the December 29, 1955, agreement contain erroneous statements similar to those in that agreement. The petitioner alone of the parties herein mentioned, was a dealer in and a seller of fuel oil at retail. It had conducted that business and paid commissions to the McGillis interests for many years. The commissions which it paid after December 1955 to Service Engineering were no different in purpose or character from those paid previously. Its customer lists were not made larger and the commissions which it paid to Service Engineering were not made more onerous by the agreement of December 29, 1955, to which it was not a party. This case should be decided upon what actually took place rather than upon misleading statements in the written agreement which are obviously untrue and contrary to the facts of the transactions which actually took place. The "facts" relied upon by the Commissioner not only do not reflect what actually occurred but reflect actions which could not have taken place. The issue is decided for the petitioner. Decision will be entered under Rule 50.